NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAMBERS OF<br>**SUSAN D. WIGENTON**<br>UNITED STATES DISTRICT JUDGE | MARTIN LUTHER KING COURTHOUSE<br>50 WALNUT ST.<br>NEWARK, NJ 07101<br>973-645-5903 |

March 24, 2021

Ronald L. Tobia, Esq.
Othiamba Nkosi Lovelace, Esq.
Tobia & Lovelace Esqs., LLC
5 Sicomac Road, Suite 177
North Haledon, NJ 07508
*Attorneys for Petitioner*

Gregory J. Hazley, Esq.
Richard F.X. Regan, Esq.
Decotiis, Fitzpatrick, Cole & Giblin, LLP
61 South Paramus Road, Suite 250
Paramus, NJ 07652
*Attorneys for Respondent*

**LETTER OPINION FILED WITH THE CLERK OF THE COURT**

Re:   *Utility Systems, Inc. v. International Union of Operating Engineers Local 825, AFL-CIO*, Civil Action No. 20-14369 (SDW) (LDW)

Counsel:

Before this Court is Utility Systems, Inc.'s ("Utility" or "Petitioner") Motion to Vacate the Arbitration Award entered by Arbitrator Gerard G. Restaino (the "Arbitrator") on August 14, 2020, in favor of International Union of Operating Engineers Local 825, AFL-CIO ("Local 825" or "Respondent"). Also before this Court is Local 825's Motion to Confirm the Arbitration Award, filed in member case Civ. No. 20-14534 (consolidated on November 13, 2020). Jurisdiction and venue are proper pursuant to 28 U.S.C. §§ 1331 and 1391, respectively. This letter opinion is issued without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons discussed below, Utility's motion is **DENIED** and Local 825's motion is **GRANTED**.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

Utility is a construction contractor incorporated and based in New Jersey and Local 825 is a labor union that is also based in New Jersey. (D.E. 1 (Petition to Vacate Arbitration Award) ¶¶ 3–4.) The present lawsuit arises out of a labor dispute between the parties regarding the hiring of operating engineers ("operators"). (*See id.* ¶¶ 4, 20–21.) Utility's collective bargaining

agreement with Local 825 (D.E. 7-2 Exs. B and D ("Utility-Local 825 CBA"))[1] requires it to employ operators obtained from Local 825's open employment list (Local 825's "hiring hall"), and additionally requires Utility to subcontract work only to those subcontractors who agree to follow the same hiring hall procedure. (Utility-Local 825 CBA at 1, Art. 1 ¶ 2.) In October 2018, Local 825 filed grievances pursuant to the procedure set forth in the Utility-Local 825 CBA, for alleged hiring hall and subcontracting violations related to four projects that occurred in New Jersey from 2016 to 2018. (D.E. 7-2 Ex. A (August 14, 2020, Arbitration Opinion and Award ("Arb. Op.")) at 1; *see* Utility-Local 825 CBA Art. XXIV.) The crux of the grievances is that Utility violated its CBA with Local 825 by subcontracting work to non-signatory contractors, including P&A Construction, Inc. ("P&A"), that did not follow the required hiring hall procedures. (*See* Arb. Op. at 8–11.) In accordance with the Utility-Local 825 CBA, these grievances proceeded to bilateral arbitration between Utility and Local 825 on September 24, 2019. (*Id.* at 1.)

On the eve of arbitration, Utility and P&A filed suit in this Court against Local 825 and another union—United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, Local 15024, AFL-CIO-CLC ("Local 15024")—to stay the bilateral arbitration between Utility and Local 825. *P&A Constr., Inc. and Utility Systems, Inc. v. Int'l Union of Operating Engineers Local 825*, Civ. No. 19-18247, 2020 WL 773128, at *1 (D.N.J. Feb. 18, 2020), *appeal docketed*, No. 20-1634 (3d. Cir. Mar. 23, 2020).[2] Additionally, Utility and P&A moved to compel tripartite arbitration between (1) Utility and P&A, (2) Local 825, and (3) Local 15024, to resolve the issue of which union has jurisdiction over Utility and P&A's operator jobs. *Id.* In support of their motion, Utility and P&A claimed that they were "single employers" or "joint employers" within the meaning of § 301 of the Labor Management Relations Act, *as amended*, 29 U.S.C. § 185. *See id.* at *1. They argued that Local 825 claimed jurisdiction over operator jobs that Utility and P&A (as joint-employers) were obligated to fill with members of Local 15024 pursuant to a P&A-Local 15024 CBA. (*Id.*) This Court denied Utility and P&A's motion on February 18, 2020, and that decision is presently on appeal. (*Id.*)

When the Utility-Local 825 arbitration resumed on November 5, 2019, Utility argued that its violations of its CBA with Local 825 were excused by an unwritten "work sharing agreement" that dated back to 1983, decades before the parties signed the current CBA. (Arb. Op. at 23–24.) According to Utility, the work sharing agreement was among Utility, Local 825, P&A, and Local 15024, and it allowed Utility to employ P&A employees and Local 15024 members on its projects. (*Id.*) However, the testimony offered by Utility's witnesses at the arbitration hearing undercut its assertions about a work sharing agreement. Benedita Barros and Frank Pinho, two of Utility's

---

[1] Utility signed the CBA with Local 825 through its collective bargaining representative, Construction Contractors Labor Employers of New Jersey ("CCLE"). (*See* D.E. 7-2 Exs. F and G (CCLE Negotiation Authorization Forms signed by Utility).) D.E. 7-2 Exs. B and D contain the relevant portions of the CBA in effect between Utility and Local 825 for the years 2014–2017 and 2017–2020, respectively. D.E. 7-2 Exs. C and E list the employers, including Utility, that agreed to be bound by the CBA entered into by CCLE as of May 2014 and April 2017, respectively.

[2] Utility and P&A also requested a stay of the bilateral arbitration between Utility and Local 825 but withdrew that request prior to this Court's decision denying their motion to compel tripartite arbitration. *P&A Constr.*, 2020 WL 773128, at *1 n.1. Instead, the Arbitrator took some initial evidence on September 24, 2019, and postponed the remainder of the arbitration until November 5, 2019. (*See* D.E. 7 at 8.)

principals, did not produce any writing between the parties in support of such an agreement. (*See id*. at 31–32; *see also id*. at 2–3, 26.) James Stevens, a former P&A employee and former Local 15024 business agent, testified that he was unable to confirm the exact nature of the alleged work sharing arrangement. (*See id.* at 30.) Similarly, James Scarpone, a former Local 825 business agent, was unable to identify a work sharing agreement involving Utility. (*See id.*)

Months after the hearings concluded, on February 6, 2020, Utility asked the Arbitrator to reopen the hearing and allow Utility to recall Ms. Barros and Mr. Pinho, as well as call unidentified representatives of Local 825, for the purpose of rebutting the testimony of Utility's other two witnesses, Mr. Scarpone and Mr. Stevens. (D.E. 1-5 (Utility's E-mail Motion to Reopen); *see* Arb. Op. at 2–3.)[3] Local 825 opposed this request the next day. (D.E. 7-1 Ex. G (Local 825's Opposition Letter); *see* Arb. Op. at 3.) On February 17, 2020, the Arbitrator denied the request, noting that "[b]oth parties had ample opportunity to present their cases-in-chief" and prolonging the matter would be "anathema to the arbitration process." (Arb. Op. at 3.)

On August 14, 2020, the Arbitrator issued his opinion and award. As to the alleged work sharing agreement, the Arbitrator concluded that Utility was unable to produce a written agreement and Utility's own witnesses were unable to confirm the existence of such an agreement. (*Id.* at 30.) Accordingly, the Arbitrator reviewed the alleged agreement under the standards of a past practice, providing five factors that must exist for a past practice to be binding: the practice must be (1) "unequivocal"; (2) "regularly and uniformly granted"; (3) "clearly enunciated, freely and openly allowed, and exist over a reasonable period of time"; (4) "accepted and acted upon by the parties themselves through their authorized agents in administering the written agreement"; and (5) "not vary the express provisions of the agreement." (*Id.* at 31.)

In analyzing these factors, the Arbitrator found that the record was "devoid of any documentation to support the existence of a past practice" and concluded that the testimony of Utility's witnesses did not corroborate Utility's position. (*Id.*) While Utility's principals testified that there was a 35-year work sharing agreement, they did not produce any documentation to support this testimony. (*Id.* at 31–32.) The Arbitrator noted that the fourth factor specifically weighed against finding that a binding past practice existed, as there was no proof of a mutual agreement between the parties; in fact, there was no evidence that Local 825 acknowledged, accepted, or even knew of the agreement. (*Id.* at 32.)

After rejecting Utility's argument that a work sharing agreement existed, the Arbitrator found that Utility had violated its CBA with Local 825. (*Id.* at 33.) Accordingly, the Arbitrator awarded $363,613.49 in damages to Local 825, consisting of lost wages and benefit funds due to the union. (*Id.* at 34; *see id.* at 19–20.) Utility subsequently filed the instant suit in this Court, on

---

[3] According to Utility's counsel, he only rested his case in November 2019 because a tentative settlement had been reached. (D.E. 1 ¶ 33.) When the settlement failed, Utility needed to call rebuttal witnesses to "clarify the testimony" of Mr. Scarpone and Mr. Stevens. (*Id.*)

October 13, 2020, and moved to vacate the award.  (D.E. 1, 2.)[4]  Local 825 timely opposed the motion, (D.E. 7), and Utility did not file a reply.

## II. LEGAL STANDARD

"There is a strong presumption under the Federal Arbitration Act ["FAA"], 9 U.S.C. § 1 *et seq.*, in favor of enforcing arbitration awards." *Brentwood Med. Assocs. v. United Mine Workers of Am.*, 396 F.3d 237, 241 (3d Cir. 2005) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).  "On application for an order confirming [an] arbitration award, [a] court 'must grant' the order 'unless the award is vacated, modified, or corrected as prescribed in [the FAA].'" *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 587 (2008) (quoting 9 U.S.C. § 9).  A district court conducts its review "under an 'extremely deferential standard,' the application of which 'is generally to affirm easily the arbitration award.'" *Hamilton Park Health Care Ctr. Ltd. v. 1199 SEIU United Healthcare Workers E.*, 817 F.3d 857, 861 (3d Cir. 2016) (quoting *Dluhos v. Strasberg*, 321 F.3d 365, 370 (3d Cir. 2003)).

As "courts accord arbitration decisions exceptional deference," a party seeking to vacate an award bears the "heavy burden" of proving that the award at issue should be overturned. *Handley v. Chase Bank USA NA*, 387 Fed. App'x 166, 168 (3d Cir. 2010) (citation omitted).  Under the FAA, there are four grounds upon which an arbitration award may be vacated:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators. . .;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).  In cases involving a collective bargaining agreement, generally, a court will "only vacate an award if it is entirely unsupported by the record or if it reflects a manifest disregard of the agreement." *Exxon Shipping Co. v. Exxon Seamen's Union*, 73 F.3d 1287, 1291 (3d Cir. 1996) (quotation and citation omitted).

## III. DISCUSSION

Utility asserts that the arbitration award must be vacated because the Arbitrator committed misconduct that resulted in Utility being deprived of a fair and complete hearing.  Specifically, Utility asserts that the Arbitrator committed misconduct when he (1) refused to permit key witnesses to testify and (2) failed to conduct a tripartite arbitration.  (D.E. 2-1 at 6–11.)  As summarized above, this Court already denied Utility's request for tripartite arbitration in this

---

[4] Local 825 similarly filed suit in this District to confirm the award. *International Union of Operating Engineers Local 825 v. Utility Systems Inc*, Civ. No. 20-14534 (filed Oct. 15, 2020).  That matter was initially assigned to the Hon. John M. Vazquez and later transferred to this Court and consolidated with the instant suit, on November 13, 2020.  (D.E. 8 in Civ. No. 20-14369; D.E. 11 and 12 in Civ. No. 20-14534.)

matter, and the claim is therefore barred by the doctrine of collateral estoppel.[5] This Court will therefore analyze whether the Arbitrator's refusal to permit certain testimony constituted misconduct that warrants vacating the arbitration award.

Under the FAA, a district court "may make an order vacating the award upon the application of any party to the arbitration . . . where the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy." 9 U.S.C. § 10(a). The Third Circuit has defined "misconduct" under this provision as conduct "'which so affects the rights of a party that it may be said that he was deprived of a fair hearing.'" *Coastal Gen. Const. Servs. Corp. v. Virgin Islands Hous. Auth.*, 98 F. App'x 156, 159 (3d Cir. 2004) (quoting *Newark Stereotypers' Union v. Newark Morning Ledger Co.*, 397 F.2d 594, 599 (3d Cir. 1968)). It is "axiomatic that a district court may vacate an award if a party to an arbitration proceeding has not been given notice and opportunity to present arguments and evidence on the merits of the dispute." *Teamsters Local 312 v. Matlack, Inc.*, 118 F.3d 985, 995 (3d Cir. 1997) (citations omitted).

Here, Utility requested to reopen the record months after it rested its case. The Arbitrator denied this request after considering the parties' arguments on the issue. Notably, Utility's request to reopen the record and submit additional testimony was made to rebut the testimony of its *own* two witnesses, and not to distinguish or counter any testimony put on by Local 825. The request stemmed primarily from Utility's desire to allow its principals, Ms. Barros and Mr. Pinho, to have a "second bite of the apple" and reframe or expand their earlier testimony. It was not based on newly discovered evidence or even overlooked evidence, as both Ms. Barros and Mr. Pinho had *already* testified as to their understanding of the alleged work sharing agreement. No due process considerations were implicated by their inability to testify a second time, as Utility was undeniably "given notice and opportunity to present arguments and evidence" at the initial hearing. *Id.* If Utility wanted to "rebut[]" or "clarify" the testimony of its witnesses Mr. Scarpone and Mr. Stevens, (D.E. 1-5), with the testimony of its principals or unidentified Local 825 business representatives, it could and should have done so before testimony concluded in November 2019.

These circumstances are easily distinguishable from those set forth in the cases of arbitrator misconduct that Utility cites. (*See* D.E. 2-1 at 6–8.) For example, in *Coastal Gen.*, the arbitrator refused to reschedule a hearing after a party "refused to supply supporting documentation for its original claim and, less than twenty-four hours before the arbitration hearing was set to begin, presented hundreds of pages of documents in support of an amended claim for almost double the amount." 98 F. App'x at 159. In *Teamsters Local 312*, the arbitrator decided the case before one of the parties even "had an opportunity to present its case on the merits." 118 F.3d at 996. In *Tempo Shain Corp. v. Bertek, Inc.*, the arbitration panel refused to adjourn a hearing to allow

---

[5] Utility is barred from relitigating the tripartite arbitration issue because that claim (1) is "identical to the issue" that this Court previously decided, (2) "was actually litigated in the prior proceeding," (3) was asserted in a case that went to "a final judgment on the merits," (4) "was essential to the prior judgment," and (5) was asserted by Utility, "a party to the earlier proceeding." *Hogg's v. New Jersey*, 352 F. App'x 625, 629 (3d Cir. 2009) (citation omitted) (stating the requirements for collateral estoppel). Moreover, this Court's prior decision on the issue of tripartite arbitration "is no less final merely because [Utility] is currently appealing it," because, "under New Jersey collateral estoppel doctrine, 'a judgment is final even pending an appeal.'" *Parker v. Est. of Blair*, Civ. No. 19-21093, 2020 WL 6707963, at *5 (D.N.J. Nov. 16, 2020) (quoting *Bondi v. Citigroup, Inc.*, 423 N.J. Super. 377, 426 (App. Div. 2011)).

5

"plainly pertinent" testimony from a witness who was temporarily unavailable due to a family medical emergency. 120 F.3d 16, 17–20 (2d Cir. 1997) (quotation omitted). Likewise, in *Allendale Nursing Home, Inc. v. Local 1115 Joint Bd.*, the arbitrator declined to adjourn a hearing to accommodate a hospitalized witness who was "a crucial, if not the most crucial, representative of the plaintiff." 377 F. Supp. 1208, 1214 (S.D.N.Y. 1974). The circumstances of the present case are not similarly egregious or unfair.

Other cases in this District and Circuit, where the court affirmed the arbitrator's award, are more akin to the instant facts. *See, e.g.*, *Composition Roofers Local 4 Pension Fund v. J. Murphy Roofing & Sheet Metal, Inc.*, Civ. No. 11-6528, 2013 WL 4876092, at *5–6 (D.N.J. Sept. 11, 2013) (affirming the arbitrator's denial of a request to reopen the record and "afford[ing] his decision due deference" because the arbitrator gave the request "sufficient consideration" in finding that the employer "had adequate notice and opportunity . . . to present any evidence or argument it thought pertinent"); *Shopping Cart, Inc. v. Amalgamated Food Emp. Local 196*, 350 F. Supp. 1221, 1224 (E.D. Pa. 1972) (affirming the arbitrator's denial of a motion to reopen the record where the "arbitrator stressed that both sides had had the opportunity to present all relevant evidence at the hearing, and that plaintiff was only seeking to introduce evidence which it had purposely withheld at the hearing," and further noting that the arbitrator's concern about timely completing the arbitration was "a valid one"); *see also New Jersey Bldg. Laborers Dist. Councils Local 325, Liuna v. Molfetta Indus. Co.*, 365 F. App'x 347, 350 (3d Cir. 2010) (concluding that an employer's request to reopen the record for additional testimony was "not one of the limited circumstances under which an arbitration proceeding must be reopened").

After reviewing the instant record, this Court finds no basis to conclude that the Arbitrator committed misconduct, that he deprived Utility of a fair hearing, or that he otherwise "exceeded [his] powers" within the meaning of the FAA. *See* 9 U.S.C. § 10(a). Instead, this Court finds that the Arbitrator gave Utility sufficient opportunity to present witness testimony and that he fairly considered Utility's request to reopen the record. The record supports the Arbitrator's conclusions that "[b]oth parties had ample opportunity to present their cases-in-chief" and that prolonging the matter would have been "anathema to the arbitration process." (Arb. Op. at 3.) Even assuming, *arguendo*, that Utility's allegations about the work sharing agreement are true, there is no support for concluding that an oral agreement made between the parties in 1983 superseded the written CBA that the parties entered into decades later. This Court will therefore accord the Arbitrator's decision the "exceptional deference" it is due. *Handley*, 387 Fed. App'x at 168.

### IV. <u>CONCLUSION</u>

For the reasons set forth above, Utility's Motion to Vacate the Arbitration Award is **DENIED** and Local 825's Motion to Confirm the Arbitration Award is **GRANTED**. An appropriate order follows.

/s/ Susan D. Wigenton<br>**SUSAN D. WIGENTON, U.S.D.J.**

Orig: Clerk
cc: Parties
Leda D. Wettre, U.S.M.J.